UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| K.L., an individual,<br>Plaintiff,<br>v.<br>BEVERLY LODGE, et al.,<br>Defendants. | No. 2:25-cv-01763-JAM-CKD<br><br>**ORDER DENYING MOTION TO DISMISS** |

Defendants Beverly Lodge and Manish Patel move to dismiss Plaintiff K.L.'s claims brought under the Trafficking Victims Protection Reauthorization Act ("TVPRA") on the basis that they are almost entirely time-barred and fail to state a plausible claim for relief. As discussed below, the Court disagrees and finds that Plaintiff's claims are timely under the continuing violations doctrine. The Court also finds that Plaintiff's claims are adequately pled. Accordingly, Defendants' Motion to Dismiss is denied.

## I. FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Plaintiff alleges she was sex trafficked at the Beverly Lodge, a hotel owned and operated by Defendants in South Lake

Tahoe, from 2012 until July 2015. Compl. ¶¶ 8, 50–51, ECF No. 1. This trafficking occurred in plain view of and with the knowledge of Defendants and Defendants' staff. Id. ¶¶ 57–81. Not only was Plaintiff harbored in rooms at the hotel and forced to engage in sex with several men every day under threat of physical and psychological abuse, the manager or owner of the hotel, "Patel," traded hotel rooms for commercial sex with Plaintiff against her will. Id. ¶¶ 9-10, 48, 56, 58, 71. Plaintiff also alleges that a front desk employee paid for sex with her. Id. ¶ 72.

Plaintiff's traffickers held her and several other girls captive at the hotel over several stays, exhibiting visible signs of trafficking during each stay including paying for stays in cash; requesting certain rooms next to each other and away from other guests; obvious illegal drug use; frequent requests for linen changes; unusually large numbers of used condoms in the trash; unusually large amounts of male visitors going in and out of her and other victim's rooms at all hours of the day and night; visible signs of physical abuse; victims wearing clothing inappropriate for the weather; loud noises of abuse and other violence audible to staff and other guests; and loitering or soliciting on motel grounds. Id. At ¶¶ 60–67, 73–78. Plaintiff alleges these "red flags were open and obvious to anyone working at the Defendants' motel and lasted consistently and regularly for years." Id. ¶ 68. Plaintiff also alleges that numerous guests left reviews of the hotel online that directly put Defendants on notice of sex trafficking, including reviews mentioning prostitutes, bodily fluids on sheets, males and females fighting in public areas, residents living on the

property full time, and blood around the rooms. Id. ¶ 80. As such, Plaintiff alleges that Defendants knew or should have known she was being trafficked at the Beverly Lodge from 2012 through July 2015. Id. ¶ 81. Plaintiff further alleges Defendants "profited and directly benefited from the room rentals and other goods and things purchased as a direct result of their participation in the sex trafficking venture." Id. ¶ 82.

Plaintiff escaped her traffickers in July 2015, and brought this action on June 24, 2025, alleging causes of action for (1) perpetrator liability and (2) beneficiary liability under 18 U.S.C. § 1595 of the TVPRA. Id. ¶¶ 11, 84-97, 106-07. Defendants filed a Motion to Dismiss on August 25, 2025. Mot. Dismiss, ECF No. 18; Mem. P. & A. in Support of Mot. Dismiss ("P. & A."), ECF No. 19. This matter is fully briefed. Opp'n Mot. Dismiss ("Opp'n"), ECF No. 29; Reply Mot. Dismiss ("Reply"), ECF No. 31.

On November 3, 2025, the Court stayed the case pending disposition of the Ninth Circuit appeal in Doe v. G6 Hospitality, LLC, No. 25-4568, as that appeal sought to address a split among district courts as to whether the continuing violations doctrine applies to TVPRA claims, a question pertinent to the timeliness of Plaintiff's claims here. ECF No. 37. On June 5, 2026, Plaintiff filed a Notice Regarding Status of Related Ninth Circuit Appeal and Request to Lift Stay, advising the Court that the parties in Doe v. G6 Hospitality, LLC had reached a settlement. ECF No. 40. As a result, the appeal was voluntarily dismissed, and the Ninth Circuit did not issue a decision addressing the certified question concerning the continuing

violations doctrine. Id. In light of that development, the Court lifted the stay on June 5, 2026, and set a hearing on Defendants' Motion to Dismiss on August 25, 2026. ECF No. 41; ECF No. 43. That hearing date is now vacated and the Court decides this motion on the parties' briefs pursuant to Local Rule230(g).

## II. LEGAL STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The motion may be granted only if "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). The court assumes all factual allegations are true and "construe[s] them in the light most favorable to the nonmoving party." Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995) (citing Everest & Jennings, Inc. v. Am. Motorists Ins. Co., 23 F.3d 226, 228 (9th Cir. 1994)). That said, if the complaint's allegations do not "plausibly give rise to an entitlement to relief," the motion must be granted. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). However, this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. Iqbal, 556 U.S. at 678. In the same vein,

conclusory or "formulaic recitation[s] of the elements" do not alone suffice. Id. (internal quotations and citations removed). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

## III. OPINION

Defendants seek dismissal of Plaintiff's TVPRA claims to the extent they are based on abuse occurring before June 24, 2015, arguing that "any claim based on [this] conduct . . . which constitutes 99% of the alleged trafficking" is time-barred because Plaintiff filed her complaint nearly 10 years after her trafficking ceased. P. & A. at 1-2. Defendants argue that neither the discovery rule, the continuing violations doctrine, nor equitable tolling, which Plaintiff pleads make her claims timely, are applicable here. Id. at 4-10. Defendant further argues that Plaintiff fails to state a plausible claim during the narrow period within the statute of limitations, from June 24, 2015, through July 2015. Id. at 10-11. Thus, Defendants argue Plaintiff's claims must be dismissed in their entirety.

Contrary to Defendants" arguments, the Court finds that the continuing violations doctrine applies here such that Plaintiff's claims from 2012 through July 2015 are timely. The Court also finds that Plaintiff's claims are adequately pled. Accordingly, the Court declines Defendants' motion.

### A. The Discovery Rule is Inapplicable to Plaintiff's Claims

As an initial matter, Plaintiff invokes the discovery rule

to allege her claims are timely because "[a]t the time she was harmed and up to at least July 2025, Plaintiff was under the coercion and control of her trafficker who abused and manipulated her" and thus "did not discover and could not have reasonably discovered the legal cause of her injuries more than ten years before she filed this lawsuit." Compl. ¶¶ 103-04. Defendants argue that Plaintiff's reliance on the discovery rule is misplaced as the plain language of the TVPRA dictates that Plaintiff's claims accrued when her causes of action arose, not when they were discovered. P. & A. at 4.

The Court agrees. The TVPRA requires that all claims be brought within 10 years of when the cause of action "arose" or the victim reaches 18 years of age, whichever is later. 18 U.S.C. § 1595(c). For federal statutory claims like claims under the TVPRA, a cause of action normally arises when it "accrues," i.e., when it "comes into existence," Gabelli v. S.E.C., 568 U.S. 442, 448 (2013) (quoting United States v. Lindsay, 346 U.S. 568, 569 (1954)), or in other words, when it is "complete and present," Graham Cnty. Soil & Water Cons. Dist. v. U.S. ex rel. Wilson, 545 U.S. 409, 418 (2005) (quoting Bay Area Laundry & Dry Cleaning Pens. Tr. Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 201 (1997)). "The Supreme Court has described this rule of accrual as the 'standard rule.'" J.M. v. Red Roof Franchising, No. 2:24-cv-03384-KJM-JDP, 2025 WL 2410941, at *5 (E.D. Cal. Aug. 20, 2025) (quoting Gabelli, 568 U.S. at 448).

Here, Plaintiff alleges her trafficking started in 2012 and continued through July 2015 when she escaped her traffickers. Thus, under the standard accrual rule, her TVPRA claims accrued

in July 2015 at the latest, if not well before. Despite this, Plaintiff alleges her claims did not accrue in 2015, but rather much later, when she first understood the full scope and causes of her injuries. See Compl. ¶¶ 103–04. Courts normally refer to this type of accrual as the "discovery rule," i.e., that claims do not accrue until plaintiffs know or reasonably should know of the injury or harm at the root of their claims. See Rotkiske v. Klemm, 589 U.S. 8, 12 (2019); Merck & Co. v. Reynolds, 559 U.S. 633, 644 (2010).

However, fellow district courts in this circuit have soundly rejected application of the discovery rule in similar TVPRA cases. For example, as reasoned by the court in C.C. v. Rashid,

> [T]he discovery rule does not apply to the TVPRA. The TVPRA's text states: "No action" for "a violation of this chapter" may be brought any "later than the later of" "10 years after the cause of action arose" or "10 years after the victim reaches 18 years of age." Considering a statute of limitations that likewise ran from "the date on which the cause of action arose," the Supreme Court held that this language "incorporates the standard rule that the limitations period commences when the plaintiff has a complete and present cause of action.'" A plaintiff has a "complete and present cause of action" once she "has a right to commence it." The TVPRA's accrual language does not wait until the plaintiff has "discovered" his cause of action, but rather commences when the cause of action arose. Thus, the TVPRA's text does not appear to incorporate the discovery rule.

No. 2:23-cv-02056-GMN-BNW, 2025 WL 1785273, at *5 (D. Nev. June 26, 2025) (citations omitted). The court in Red Roof Franchising came to a similar conclusion, finding that "no court appears to have interpreted the TVPRA as authorizing courts to use a general discovery rule, and at least one district court within this circuit has expressly rejected the discovery rule in a TVPRA

case," thus "declin[ing] to apply a discovery rule to [plaintiff]'s claims." 2025 WL 2410941, at *7.

Plaintiff has failed to rebut the reasoning in either of these opinions or point to case law supporting her contention that the discovery rule should apply. See generally Opp'n. Thus, the Court declines to apply the discovery rule here.

B. Plaintiff's Claims are Timely under the Continuing Violations Doctrine

Plaintiff also alleges her claims are timely under the continuing violations doctrine because her "lawsuit arises out of a pattern of continuous and ongoing tortious conduct" resulting from Defendants' "continuous facilitation of trafficking at the subject hotel location" and "ongoing venture with her criminal trafficker[s]." Compl. ¶¶ 108-10. Under this doctrine, Plaintiff argues her claims did not fully accrue until July 2015 as she "was subject to continuous trafficking through at least June 2015." Id. at 109.

Defendants argue that the continuing violations doctrine does not apply here as the Supreme Court has effectively limited application of the doctrine to hostile work environment claims, which this is not. P. & A. at 4-7. Unlike hostile work environment claims, which accrue over time and are considered part of the same illegal act, Defendants argue that each act of sex trafficking was a discrete, actionable act that started a new limitations clock once Defendants' knowledge of the trafficking was established. Id. Thus, Defendants contend the continuing violations doctrine does not save Plaintiff's untimely allegations of trafficking prior to June 24, 2015. Id. at 7.

The Court disagrees and finds that the continuing violations doctrine applies here. The continuing violations doctrine functions as an exception to federal accrual rules "allowing a plaintiff to seek relief for events outside of the limitations period." Bird v. Dep't of Human Servs., 935 F.3d 738, 746 (9th Cir. 2019) (quoting Knox v. Davis, 260 F.3d 1009, 1013 (9th Cir. 2001)). This doctrine applies "where there is no single incident that can fairly or realistically be identified as the cause of significant harm." Flowers v. Carville, 310 F.3d 1118, 1126 (9th Cir. 2002) (internal quotation marks omitted). In these situations, the statute of limitations does not begin to run until the continuing wrongful conduct ends. Id.

Historically, the Ninth Circuit recognized two applications of the continuing violations doctrine: (1) to "a series of related acts, one or more of which falls within the limitations period" (known as the serial acts branch), and (2) to "the maintenance of a discriminatory system both before and during [the limitations] period" (known as the systematic branch). Bird, 935 F.3d at 746 (quoting Gutowsky v. Cnty. of Placer, 108 F.3d 256, 259 (9th Cir. 1997)) (bracketing in original). However, the Supreme Court severely limited the continuing violations doctrine in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002). Therein, the court held that "'discrete . . . acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges' because '[e]ach discrete . . . act starts a new clock for filing charges alleging that act.'" Bird, 935 F.3d at 747 (quoting Morgan, 536 U.S. at 113). In 2019, the Ninth Circuit further

observed that, "[a]lthough the Supreme Court in [Morgan] addressed only the serial acts branch of the continuing violations doctrine . . . we have applied [Morgan] to abrogate the systematic branch of the continuing violations doctrine as well." Id. (citation omitted). Thus, under Morgan, "little remains of the continuing violations doctrine." Id. at 748.

However, in Morgan, the Supreme Court expressly carved out an exception for hostile work environment claims, reasoning that "[h]ostile environment claims are different in kind from discrete acts" because "[s]uch claims are based on the cumulative [e]ffect of individual acts" that "cannot be said to occur on any particular day." Morgan, 536 U.S. at 115. In other words, such claims by "[t]heir very nature involve[] repeated conduct." Id.

Numerous district courts in this circuit have continued applying the continuing violations doctrine to TVPRA claims in the wake of Morgan, reasoning that such claims resemble hostile work environment claims in that they are premised on repeated conduct wherein the harm cannot fairly be traced to any single incident or day. For example, in A.B. v. Interstate Management Co., the court held that "the continuing tort doctrine may apply here, given Plaintiff's alleged continuous trafficking." No. 3:23-cv-00388-IM, 2024 WL 5264652, at *4 (D. Or. Dec. 31, 2024). In particular, the court found that "[t]he TVPRA violation alleged here is arguably akin to a hostile work environment claim . . . [because] [l]ike hostile work environment claims, claims of trafficking under the TVPRA often by their very nature involve repeated conduct occurring over a series of days, weeks, or more, that together forms one wrongful financial scheme." Id.; see

also Rashid, 2025 WL 1785273, at *6 ("Because the nature of TVPRA claims can involve repeated conduct over a period of time, the Court finds that the continuing torts doctrine applies, despite the gaps in trafficking."). Similarly, in J.M. v. Choice Hotels International Inc., the court applied the continuing violations doctrine to plaintiff's TVPRA claims when she alleged she was "forced to service her buyers under the control of her traffickers, at defendants' franchisee hotels from February 12, 2012 to April 23, 2012" because "[d]uring this three-month period, there [was] 'no single incident that c[ould] fairly or realistically be identified as the cause of significant harm.'" No. 2:22-cv-00672-KJM-JDP, 2022 WL 10626493, at *6 (E.D. Cal. Oct. 18, 2022) (quoting Flowers, 310 F.3d at 1126).

This Court recognizes that other district courts have recently declined to apply the continuing violations doctrine to TVPRA claims under Morgan, reasoning that:

> [While] a hotelier's knowledge (or reckless disregard) of the fact that its hotel rooms are being used for sex trafficking and/or its knowing participation in a venture engaged in sex trafficking may develop through a series of acts and over a period of time[,] once the requisite knowledge exists, each act of "harboring" or each receipt of a benefit from the sex trafficking venture is actionable under 18 U.S.C. ¶ 1591(a). That the unlawful conduct is repeated does not stall the running of the limitations period or make all subsequent trafficking episodes part of a single illegal act. Each discrete, actionable act starts a new clock for filing a lawsuit alleged that act.

Doe v. G6 Hosp., LLC, No. 2:24-cv-01235-RSL, 2025 WL 1167550, at *5 (W.D. Wash. Apr. 22, 2025); see also Doe v. Six Continents Hotels Inc., No. CV 24-11219-MWF (AJRx), 2025 WL 2020003, at *6 (C.D. Cal. June 26, 2025) (holding that "each discrete act of sex

trafficking at the hotels constitutes a discrete, actionable tort, so long as the Defendants had the requisite knowledge to be held liable”).

The Ninth Circuit has yet to resolve this split. In the absence of such guidance and having carefully considered the reasoning of the district court opinions above, the Court finds that the more persuasive legal analysis lies with those decisions that have held the continuing violations doctrine applies to TVPRA claims like those Plaintiff has alleged here.

The TVPRA provides criminal penalties for sex trafficking, see 18 U.S.C. § 1591, as well as civil liability, see id. § 1595. Section 1595 provides a private right of action for victims against both perpetrators of sex trafficking and those who benefit financially from the trafficking:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

Id. § 1595(a). Here, Plaintiff brings two claims for perpetrator and beneficiary liability under 18 U.S.C. § 1595. To succeed on her claim of perpetrator liability, Plaintiff must allege Defendants knowingly harbored or maintained her “with knowledge that fraud or force would be used to cause her to engage in a commercial sex act.” J.M. v. Choice Hotels Int’l, Inc., No. 2:22-cv-00672-KJM-JDP, 2023 WL 3456619, at *2 (E.D. Cal. May 15, 2023). To succeed on her claim for beneficiary liability,

Plaintiff must allege that Defendants "(1) knowingly benefitted, (2) from participation in a venture . . ., (3) which it knew or should have known was engaged in conduct that violated the TVPRA." Ratha v. Phatthana Seafood Co., 35 F.4th 1159, 1175 (9th Cir. 2022). In other words, Plaintiff must allege that Defendants "knew or should have known of a venture that involved sex trafficking by force, threat of force, fraud, or coercion." Rashid, 2025 WL 1785273, at *8. Thus, determination of either TVPRA claim turns on an "assessment of all of the circumstances, including Defendant[s'] knowledge of force, fraud, or coercion." Interstate Mgmt. Co., 2024 WL 5264652, at *4.

This observation is significant for two reasons. First, even if this Court determined that the continuing violations doctrine did not apply, Plaintiff's earlier alleged trafficking incidents would likely be admissible at trial as evidence of the Defendants' knowledge under the TVPRA. Thus, dismissal of Plaintiff's claims at this stage is premature given that Plaintiff allegations of sex trafficking fall at least partially within the statute of limitations.

Second, other courts have suggested that the continuing violations doctrine should not apply "once the [defendant's] requisite knowledge exists, [as] each act of 'harboring' or each receipt of a benefit from the sex trafficking venture is actionable . . . ." G6 Hosp., LLC, 2025 WL 1167550, at *5. However, this Court is not convinced that violations of the TVPRA may be so neatly parsed. Rather, much like hostile work environment claims, TVPRA claims may require consideration of conduct that spans a series of days, weeks, or more, both to

determine a defendant's knowledge of the alleged sex trafficking venture, as well as to fully grasp the full scope the venture. In other words, it may be difficult to determine the exact moment when a defendant's "requisite knowledge exists" if such knowledge is premised on indirect evidence of trafficking such as paying for stays in cash, requesting excessive linens, or receiving large numbers of male visitors. Similarly, it may be difficult to parse out what constitutes a "discrete" act of trafficking if victims are harbored over multiple stays lasting days or weeks and are forced to service multiple clients during each stay. Because TVPRA claims may involve repeated conduct over periods of time, and such conduct may be fairly viewed as part of the same trafficking scheme, the Court finds that the continuing violations doctrine applies to Plaintiff's claims.

For these reasons, the Court declines to dismiss Plaintiff's TVPRA claims as untimely at this stage.

### C. Plaintiff has Adequately Pled Trafficking Occurred from June 24, 2015, through July 2015

Finally, Defendants argue that Plaintiff has failed to adequately allege specific facts from June 24, 2015, through July 2015 to support the timeliness of her claims. Mot. at 10-11; Reply at 5.

The Court disagrees. Plaintiff has alleged that she "and her trafficker[s] stayed at the Beverly Lodge from 2012 until July 2015, for extended periods of time, continuously and regularly" and that she was "forced to have sex with multiple buyers every day she was trafficked in Defendants' [hotel]." Compl. ¶¶ 51, 56. Plaintiff further alleges that each stay at

the hotel resulted in several red flags that put Defendants and their staff on notice of the trafficking, and that these “red flags were open and obvious to anyone working at the Defendants’ motel and lasted consistently and regularly for years.” Id. ¶¶ 67-68. As such, Plaintiff alleges that “Defendants knew and should have known that [Plaintiff] was being trafficked at the Beverly Lodge at all relevant times and from 2012 through July 2015.” Id. ¶ 81. The Court finds these allegations sufficient to infer that Plaintiff was trafficked at the Beverly Lodge from June 24, 2015, through July 2015.

Thus, the Court finds that Plaintiff’s allegations from June 24, 2015, through July 2015 are adequately pled, and support the timeliness of her claims.

## IV. ORDER

For the reasons set forth above, Defendants’ Motion to Dismiss (ECF No. 18) is DENIED. Defendants shall file their Answer to Plaintiff’s Complaint within twenty days of this Order.

IT IS SO ORDERED.

Dated: July 29, 2026

JOHN A. MENDEZ,
SENIOR UNITED STATES DISTRICT JUDGE